UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2014 MAR 10 PM 2:16

TRACI SCHMIDT, )
)
    Plaintiff, )
)
v. ) Case No. 3:14-CV-268-J-39JRK
)
INDYMAC MORTGAGE SERVICES, )
)
    Defendant. )

## PLAINTIFF'S COMPLAINT

Plaintiff, TRACI SCHMIDT ("Plaintiff"), through her attorneys, The Law Offices of Robert Peters, P.A., alleges the following against Defendant, INDYMAC MORTGAGE SERVICES ("Defendant"):

### INTRODUCTION

1. Count I of Plaintiff's Complaint is based on the Telephone Consumer Protection Act., 47 U.S.C. §227, et seq. ("TCPA").

2. Count II of Plaintiff's Complaint is based on the Florida Consumer Collection Practices Act, Fla. Stat. §559.72, et seq. ("FCCPA").

### JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. §1331 and 15 U.S.C. §1692k ("FDCPA").

4. Jurisdiction of this court arises pursuant to 15 U.S.C. 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy."

1

5. This Court has jurisdiction over Plaintiff's TCPA claim pursuant to Mims v. Arrow Financial Svcs. LLC, 132 S. Ct. 740, 2012 WL 125249 (Jan. 18, 2012).

6. Venue and personal jurisdiction in this District are proper because Defendant does or transacts business within this District, and a material portion of the events at issue occurred in this District.

## PARTIES

7. Plaintiff is a natural person residing in Jacksonville, Duval County, Florida.

8. Plaintiff allegedly owes a consumer debt as that term is defined by the FCCPA.

9. Plaintiff is a consumer as that term is defined by the FCCPA.

10. Plaintiff is a person as defined by the TCPA.

11. Defendant is a creditor as that term is defined by the FCCPA.

12. Defendant is a debt collector as that term is defined by the FCCPA.

13. Defendant is a person as defined by the TCPA.

14. Within the last two years, Defendant attempted to collect a consumer debt from Plaintiff.

15. Within the last two years, Defendant communicated with Plaintiff as that term is defined by the FCCPA.

16. Defendant is headquartered in Pasadena, California, and is a national mortgage servicer and lender to consumers.

17. Defendant engages in debt collection in the State of Florida.

18. Defendant regularly collects, or attempts to collect, debts owed or due or asserted to be owed or due another.

19. During the course of its attempts to collect debts owed or due or asserted to be owed or due another, Defendant sends to alleged debtors bills, statements, and/or other

correspondence, via the mail and/or electronic mail, and initiates contact with alleged debtors via various means of telecommunication, such as by telephone and facsimile.

20. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

21. Defendant is attempting to collect a consumer debt from Plaintiff originating from certain real property originally owned by Plaintiff's mother, who is now deceased.

22. Plaintiff's alleged debt owed arises from transactions for personal, family, and household purposes.

23. On December 30, 2011, Plaintiff filed a Voluntary Bankruptcy Petition in the United States Bankruptcy Court, Middle District of Florida, Case No.: 3:11-bk-09340.

24. All of Plaintiff's creditors holding unsecured and/or unsecured claims – including real property located at 12128 Hidden Hills Drive, Jacksonville, Florida, 32225 – were properly scheduled in Plaintiff's Voluntary Bankruptcy Petition Schedule D.

25. All creditors holding secured claims and also unsecured claims were properly scheduled in Plaintiff's Voluntary Bankruptcy Petition.

26. Plaintiff scheduled all creditors holding secured claims and also unsecured claims in Plaintiff's bankruptcy at addresses known to be addresses of all creditors holding claims, respectively.

27. On January 5, 2012, Joseph Speetjens, at the Bankruptcy Noticing Center, mailed, by first-class mail, Plaintiff's Bankruptcy Petition to all creditors holding secured claims and/or unsecured claims at the creditors' respective addresses.

28. Plaintiff's Bankruptcy Petition mailed to all creditors on January 5, 2012, was not returned by the post office.

29. Shortly after Plaintiff filed for bankruptcy, all creditors holding secured and/or unsecured claims received notice of Plaintiff's Voluntary Bankruptcy Petition.

30. Shortly after Plaintiff filed for bankruptcy, all creditors holding secured and/or unsecured claims had knowledge of Plaintiff's Voluntary Bankruptcy Petition.

31. Shortly after Plaintiff filed for bankruptcy, all creditors holding secured and/or unsecured claims had Plaintiff's bankruptcy attorney's name, address, and telephone number.

32. On April 9, 2012, the Bankruptcy Court entered a discharge in this case under 11 U.S.C. §727, which discharged Plaintiff from personal liability on the indebtedness owed to all creditors holding secured and/or unsecured claims.  See the Discharge Order attached as Exhibit A.

33. The explanation accompanying the discharge order from the Bankruptcy Court provided the following information to all creditors holding secured and/or unsecured claims:

> The discharge prohibits any attempt to collect from the debtor a debt that has been discharged.  For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor.... A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.
>
> However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy.

34. On April 11, 2012, Joseph Speetjens, at the Bankruptcy Noticing Center, mailed, by

first-class mail, the Discharge Order to all creditors holding secured/and or unsecured claims at the creditors' respective mailing addresses.

35. The Discharge Order mailed by the Bankruptcy Noticing Center on April 11, 2012, was not returned by the post office.

36. Shortly after the Bankruptcy Court entered a discharge, all creditors holding secured and/or unsecured claims received notice of the discharge.

37. In or around 2012, Defendant began placing repeated and continuous collections calls to Plaintiff in attempt to collect on an alleged debt.

38. Defendant calls Plaintiff at Plaintiff's cell phone number, 904-502-78XX.

39. Defendant calls Plaintiff up to four to six times per day on her cell phone seeking and demanding payment on the alleged debt.

40. Plaintiff believed these collection calls were attempting to collect a debt from Plaintiff.

41. Defendant attempted to collect the alleged debt from Plaintiff on at least one occasion after Plaintiff filed a Voluntary Bankruptcy.

42. Defendant attempted to collect the alleged debt from Plaintiff on at least one occasion after all creditors holding secured and/or unsecured claims had notice that Plaintiff's alleged respective debts have been discharged in Voluntary Bankruptcy.

43. Plaintiff has explained to Defendant's representatives on literally dozens of occasions that Plaintiff does not owe the debt on which Defendant is seeking to collect; that Plaintiff has received a discharge in Voluntary Bankruptcy concerning all of Plaintiff's previous creditors holding secured and/or unsecured claims; that Plaintiff refuses to pay anything on the alleged debt which Defendant claims; and that all further collections calls to Plaintiff from Defendant in connection with the alleged debt cease.

44. Despite the foregoing, Defendant has continued to place repeated and continuous collections calls directly to Plaintiff seeking and demanding payment on the alleged debt in effort to coerce, harass, and intimidate Plaintiff into payment of the alleged debt.

45. Defendant left voicemail messages on Plaintiff's cellular telephone if Plaintiff did not answer Defendant's calls. In these messages, Defendant utilized an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

46. Defendant used an "automatic telephone dialing system", as defined by 47 U.S.C. § 227(a)(1), to place its repeated collection calls to Plaintiff seeking to collect the debt allegedly owed.

47. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

48. Defendant's calls were placed to telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

49. Plaintiff is not a customer of Defendant's services, does not owe any sum of money to Defendant and has never provided any personal information, including her cellular telephone number, to Defendant for any purpose whatsoever. Accordingly, Defendant never received Plaintiff's "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on her cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).

**COUNT I**
**DEFENDANT VIOLATED THE**
**TELEPHONE CONSUMER PROTECTION ACT**

50. Defendant's conduct violated the TCPA based on, but not limited to, the following:

a. Using any automatic telephone dialing system or an artificial or pre-recorded voice to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call (47 USC §227(b)(A)(iii)), when Defendant has used an "automatic telephone dialing system" to place dozens of automated calls to Plaintiff's cellular telephone, often up to four to six calls per day. Defendant utilized an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A). The foregoing communications or attempted communications by Defendant to Plaintiff were communications for which Plaintiff may have incurred charges with her cellular phone service provider or carrier.

51. As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

52. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

53. Plaintiff is entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff, TRACI SCHMIDT, respectfully requests judgment be entered against Defendant, INDYMAC MORTGAGE SERVICES, for the following:

54. As a result of Defendant's negligent violations of 47 U.S.C. §227(b)(1), Plaintiff is entitled to and requests $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B).

55. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. §227(b)(1), Plaintiff is entitled to and requests treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C).

56. Any other relief this Honorable Court deems appropriate.

## COUNT II
## DEFENDANT VIOLATED THE
## FLORIDA CONSUMER COLLECTION PRACTICES ACT

57. Plaintiff repeats and re-alleges paragraphs 1-49 of Plaintiff's Complaint as the allegations in Count II of Plaintiff's Complaint.

58. Defendant violated the FCCPA based on, but not limited to, the following:

   a. Defendant violated the §559.72(7) of the FCCPA by willfully communicating with a debtor with such frequency as can be reasonably expected to harass, or willfully engaging in such conduct as can be reasonably expected to abuse the debtor when Defendant, throughout 2012, placed repeated and continuous collections calls to Plaintiff on Plaintiff's cell phone number, often up to four to five times per day, seeking and demanding payment on an alleged debt which Plaintiff has on literally dozens of occasions informed Defendant that Plaintiff does not owe, refuses to pay on, and demanded that further calls cease;

   b. Defendant violated the §559.72(9) of the FCCPA by attempting to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other right when such person knows that the right does not exist when Defendant continued to place repeated collections calls to Plaintiff, despite Plaintiff having informed Defendant on literally dozens of occasions that Plaintiff

has received a discharge in Voluntary Bankruptcy, Case No.: 3:11-bk-09340, with respect to all of Plaintiff's secured and/or unsecured claims; and

c. Defendant violated the §559.72(18) of the FCCPA by communicating with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address when Defendant continued to place collections calls to Plaintiff in connection with a debt on which Plaintiff has retained a bankruptcy attorney, and subsequently filed for and received a discharge in Voluntary Bankruptcy proceedings, Case No.: 3:11-bk-09340.

WHEREFORE, Plaintiff, TRACI SCHMIDT, respectfully requests judgment be entered against Defendant, INDYMAC MORTGAGE SERVICES, for the following:

59. Statutory damages of $1,000.00 pursuant to the Florida Consumer Collection Practices Act, Fla. Stat. §559.77;

60. Costs and reasonable attorneys' fees pursuant to the Florida Consumer Collection Practices Act, Fla. Stat. §559.77; and

61. Any other relief this Honorable Court deems appropriate.

RESPECTFULLY SUBMITTED,

By: _____
Robert Peters, Esq.
Robert Peters, P.A.
1054 Kings Avenue
Jacksonville, FL 32207
Tel: 904-421-6907
Fax: 904-328-3778
Service.PetersLaw@gmail.com
Attorney for Plaintiff